UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOHN BIRKHOLZ,

                        Plaintiff,

       -against-

THE CITY OF NEW YORK and THE
DEPARTMENT OF EDUCATION OF THE CITY
OF NEW YORK,

                     Defendants.

-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ FEB 2 2 2012 ★

BROOKLYN OFFICE

**MEMORANDUM & ORDER**

**10-CV-4719 (NGG) (SMG)**

      Plaintiff John Birkholz brings this action against Defendants the City of New York (the

"City') and the New York City Department of Education ("Department of Education") under

Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. ("Title VII"); the Age Discrimination

in Employment Act, 29 U.S.C. §§ 621–34; the New York State Human Rights Law, New York

Executive Law § 296 ("SHRL"); and the New York City Human Rights Law, New York City

Administrative Code § 8-107 ("CHRL"). Plaintiff alleges that Defendants discriminated against

him on the basis of his sexual orientation, gender, and age. Defendants filed a Motion to Dismiss

for Failure to State a Claim (Docket Entry # 13), seeking dismissal of all of Plaintiff's claims. As

set forth below, Defendants' Motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

      The following facts are drawn from Plaintiff's Amended Complaint (Docket Entry # 10),

and the court takes them as true for purposes of Defendants' motion to dismiss.

### A.  2007-2008 School Year

Plaintiff is a sixty-two year old "homosexual male." (Am. Compl. ¶¶ 11-12.) Plaintiff began working as a teacher for the New York City Department of Education in 1999. (Id. ¶ 13.) In 2003, he began working as a guidance counselor at Public School 81 ("P.S. 81"). (Id. ¶ 14.)

In January 2008, Plaintiff was forced to share an office with another teacher. (Id. ¶ 17.) Plaintiff asserts that sharing an office prevented him from counseling students in compliance with New York State education laws. (Id. ¶¶ 16, 19.) Plaintiff brought a union grievance on the matter of the shared office; Plaintiff prevailed in the grievance determination, but was not given his own office until September 5, 2008. (Id. ¶¶ 20, 22-23.)

**B. 2008-2009 School Year**

The same day he was given his new office, Plaintiff and another guidance counselor, Ms. Goldstein, were asked to "cover" the school cafeteria for the last period of the day for the rest of the 2008-2009 school year. (Id. ¶ 24). Plaintiff and Goldstein informed Genevieve Ventura, the Principal of P.S. 81, that this assignment violated their union contract. (Id. ¶ 24.) They were excused from the duty. (Id. ¶ 25.)

1. The November 17, 2008 Meeting

On November 17, 2008, Plaintiff was called into a meeting with Principal Ventura, Assistant Principal Diamond, and Assistant Principal Zolotin. (Id. ¶ 28.) During the meeting, Plaintiff was "accused of not picking up his counselees on time and was advised to stay on schedule." (Id. ¶ 28.) Plaintiff responded that this was because "occasional[] emergencies with students would arise . . . which needed immediate attention." (Id. ¶ 29.) Plaintiff further explained that if a student was not picked up on time, that student would be given additional counseling time during his next session. (Id. ¶ 29.)

2

Plaintiff was also asked why he did not allot forty-five minutes to each counseling session, to which Plaintiff responded that sessions were only required to be thirty minutes long. (Id. ¶ 30.) Plaintiff was also told at the November 17, 2008 meeting that he could no longer use Lego blocks during counseling, since "'it was a waste of time, and it would not look good for you being a gay man.'" (Id. ¶ 31.) The Amended Complaint does not specify whether it was Ventura, Diamond, or Zolotin who made this comment. Plaintiff was further instructed at the November 17, 2008 meeting to keep his office door open at all times; the Amended Complaint asserts doing so would have violated New York State education laws. (Id. ¶ 32.)

Ventura, Diamond, and Zolotin also told Plaintiff that several fifth-grade teachers did not want their students to be counseled by a gay man, but refused to reveal the names of these teachers to Plaintiff. (Id. ¶ 33.) After the meeting, Plaintiff passed Ventura's office and overheard her "screaming about the Lego block matter." (Id. ¶ 34.)

### 2. The February 3, 2009 Meeting

On February 3, 2009, Plaintiff was called into a third meeting with Ventura, Diamond, and Zolotin. (Id. ¶ 35.) The "main issue was [Plaintiff's] schedule and why he was not meeting his counselees in a timely fashion." (Id. ¶ 35). Plaintiff again "explained that a Counselor cannot always be on schedule" due to emergencies. (Id. ¶ 35.) During this meeting, Plaintiff was told not to work with counselees on the floor of his office because it was unprofessional. (Id. ¶ 36.)

Plaintiff was again asked why he did not allot forty-five minutes to each counseling session, to which Plaintiff again responded that sessions were only required to be thirty minutes long. (Id. ¶ 36.) Finally, Plaintiff was asked why he was not attending to certain after-school duties. (Id. ¶ 37.) Plaintiff responded that his union contract did not permit him to perform after-school duties. (Id. ¶ 37.)

3

### 3. The February 25, 2009 Meeting

On February 25, 2009, Plaintiff was again called into a meeting with Ventura, Diamond, and Zolotin. (Id. ¶ 42.) At the meeting, Diamond accused Plaintiff of "being off schedule and missing appointments because he was sleeping in his car." (Id. ¶ 42.) Plaintiff was also told—by whom it is not clear—"that the whole school was saying he missed his appointments because he was off dancing and that he was 'light in the loafers.'" (Id. ¶ 42.) Further, Diamond told Plaintiff that "everyone knew [Plaintiff] was 'out.'" (Id. ¶ 42.) Plaintiff told Diamond that "she was creating a hostile work environment and that she should stop making these comments." (Id. ¶ 42.)

At the end of the February 25 meeting, Plaintiff was told he could no longer participate in multiple activities that entailed contact with fifth-grade students. (Id. ¶ 43.) These activities included meeting with fifth-grade students at lunch, meeting with fifth-grade students in his office, and teaching the school's dance class. (Id. ¶ 43.) After this meeting, Plaintiff began seeing a therapist to address the emotional distress caused by his treatment at P.S. 81. (Id. ¶ 44.)

### C. Excessing of Guidance Counselors

On or about June 9, 2009, Ventura advised Plaintiff and Goldstein that they were being "excessed" due to insufficient funding.[1] (Id. ¶ 45.) Plaintiff's review of his union contract revealed that Ventura's decision to excess him was improper, as Plaintiff's seniority should have exempted him from excessing. (Id. ¶ 48.) On June 24, 2009, Plaintiff entered Ventura's office and advised her that he intended to grieve the excessing decision. (Id. ¶ 49.) In response, Ventura "jumped up from the table and moved towards [Plaintiff] shouting 'how dare you do this

---

[1]    "[E]xcessing occurs when a school does not need the same number of teachers or staffing as it did in the previous year. When this occurs, generally the least senior person in the particular license area is placed in excess and can move to a vacancy in another school in [the] district." John v. New York City Dept. of Educ., No. 04-CV-5861, 2006 WL 2482622, at *2 (S.D.N.Y. Aug. 29, 2006).

to me after all I have done for you. God dammit, get out of my office.'" (Id. ¶ 50.) Ventura then slammed her office door in Plaintiff's face. (Id. ¶ 50.)

Plaintiff further states that the Department of Education's public records show that the budgets for 2008 and 2009 school years were essentially the same, and that, therefore, the decision to excess Plaintiff and Goldstein was unnecessary. (Id. ¶ 51.) Additionally, Plaintiff states that he and Goldstein were the only people excessed in the 150-person staff at P.S. 81. (Id. ¶ 52.)

### D. 2009-2010 School Year

On September 3, 2009, Plaintiff was hospitalized due to a car accident. (Id. ¶ 56.) That same day, Plaintiff received a voicemail from Ventura informing Plaintiff that a counselor position had become available at P.S. 102, a public school in the same district as P.S. 81. (Id. ¶ 57.) Ventura's "budget had been reestablished," but Ventura still insisted that Plaintiff take the position at P.S. 102 rather than return to P.S. 81. (Id. ¶ 58.)

On September 4, 2009, Plaintiff's mother passed away. (Id. ¶ 59.) As a result of his mother's death and Plaintiff's car accident, Plaintiff took a medical leave of absence from his employment at P.S. 81. (Id. ¶ 60.) On September 11, 2009, Ventura left Plaintiff an "irate" voicemail in which she demanded to know why Plaintiff did not call her prior to his filing his request for medical leave. (Id. ¶ 61.) Ventura called "the funeral home" that same day to ascertain the date of Plaintiff's mother's death. (Id. ¶ 62.)

When Plaintiff returned to work on January 4, 2010 he was given additional duties at P.S. 81. (Id. ¶ 63.) One such duty was teaching classes, which, Plaintiff asserts, required him to violate union rules and act outside the scope of his "license." (Id. ¶ 64.) On January 7, 2010, Zolotin screamed at Plaintiff to "get to your assigned room now young man. I don't want to hear

any crap from you." (Id. ¶ 65.) On January 8, 2010, Plaintiff had a meeting with Ventura,

Zolotin, Diamond, and a union representative, at which Plaintiff was given a letter of

insubordination for being late to appointments with his students. (See id. ¶ 67.)

### E. Plaintiff's Second Medical Leave of Absence

On January 18, 2010, Plaintiff again requested medical leave from work, this time due to

bronchitis and a back injury. (Id. ¶ 68-69.) Ventura sent Plaintiff a form that was to be

completed by Plaintiff's doctor pursuant to the Family and Medical Leave Act, 29 U.S.C. §§

2601–54 ("FMLA"). (Am. Compl. ¶ 69-70.) Plaintiff promptly returned the form to Ventura.

(Id. ¶ 70.) However, on February 5, 2010, Plaintiff received a letter from Ventura stating that

Plaintiff was not entitled to leave under the FMLA, and that he must return to work immediately

or face disciplinary actions. (Id. ¶ 71.)

Shortly after receiving Ventura's February 5, 2010 letter, Plaintiff contacted his union

and was advised that an "immediate restoration of leave and benefits" could be achieved "upon

Ventura's signature." (Id. ¶ 72.) Dr. Ajemian, Plaintiff's orthopedic surgeon, signed a "new

medical form" and faxed it to Ventura and HR Connect, the Department of Education's human

resources division. (Id. ¶ 73.) On February 8, 2010, Plaintiff's attorney sent a letter to Ventura

to "address the concerns that plaintiff had." (Id. ¶ 92.) Defendants did not respond to this letter.

(Id. ¶ 92.)

On or about March 7, 2010, Ventura requested that Plaintiff undergo a medical

examination by the Department of Education. (Id. ¶ 74.) On March 8, 2010, Plaintiff's attorney

sent a second letter to Ventura to "address the concerns that plaintiff had." (Id. ¶ 92.) Defendants

again made no response to this letter. (Id. ¶ 92).

On March 23, 2010, Plaintiff appeared for the medical examination that Ventura requested. (Id. ¶ 78). The examining physician, a Dr. Judy, contacted HR Connect because Plaintiff's file did not contain the form from Dr. Ajemian. (Id. ¶ 78). HR Connect advised Dr. Judy that it had "misplaced" Plaintiff's file. (Id. ¶ 80.) After performing the medical examination, Dr. Judy concluded that Plaintiff was unfit for duty and would not be able to return to work until the end of August 2010. (Id. ¶ 82.) Dr. Judy advised Plaintiff that "someone doesn't like you" and that Plaintiff's file had not been "misplaced," as HR Connect maintained. (Id. ¶ 83.)

Plaintiff contacted HR Connect on April 9 and April 16, 2010, and was advised both times that his benefits had not been restored due to administrative error. (Id. ¶¶ 86, 89.) On April 16, 2010, Plaintiff's attorney sent a third letter to Ventura to "address the concerns that plaintiff had." (Id. ¶ 92.) Defendants again did not respond to this letter. (Id. ¶ 92).

Plaintiff's benefits were not restored until April 30, 2010. (Id. ¶ 91.) From September 2010 to January 2011, Plaintiff's benefits were again terminated.[2] (Id. ¶ 93.) Plaintiff "suffered significant economic and emotional injury" as a result of the two periods of benefits disruption. (Id. ¶¶ 91, 93).

### F. Procedural History

Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on June 10, 2010 and received a right to sue letter on July 20, 2010. (Id. ¶¶ 7-8). Plaintiff filed his Complaint in this lawsuit on October 14, 2010, and his Amended Complaint on April 29, 2011. (Docket Entries ## 1, 10). Plaintiff's Amended Complaint alleges claims of, (2) disparate treatment, (3) hostile work environment, (4) and constructive discharge,

---

[2]     The Amended Complaint does not detail the circumstances surrounding this second disruption of Plaintiff's benefits.

on the basis of Plaintiff's sexual orientation, gender, and/or age, and (1) retaliation in response to his complaints against said discrimination. Plaintiff brings his claims under Title VII, ADEA, the SHRL, and the CHRL. Defendants move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry # 13.)

## II. MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss, the court accepts as true all allegations of fact made by the plaintiff and draws all reasonable inferences in the plaintiff's favor. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) (quoting Bell Atl. Corp. v. Twombly, 555 U.S. 544, 570 (2007)). The complaint must set forth factual allegations that are sufficient "to raise a right to relief above the speculative level." Twombly, 555 U.S. at 555.

## III. PLAINTIFF'S CLAIMS AGAINST THE CITY OF NEW YORK

Defendants assert, and Plaintiff does not dispute, that all claims against the City of New York must be dismissed because the City and the Department of Education are distinct legal entities under New York State statute. Defendants' assertion is correct, and therefore all of Plaintiff's claims against the City of New York will be dismissed. Perez ex rel. Torres v. City of New York, 41 A.D.3d 378, 379 (N.Y. App. Div. 2007) (holding that the City of New York cannot be held liable for torts committed by the New York City Board of Education); Linder v. City of New York, 263 F. Supp. 2d 585, 590 (E.D.N.Y. 2003) (same).

## IV. PLAINTIFF'S FEDERAL DISCRIMINATION CLAIMS

Title VII of the Civil Rights Act of 1964, as amended, prohibits employment discrimination on the basis of gender. 42 U.S.C. § 2000e et seq. The Age Discrimination in

Employment Act (the "ADEA") prohibits employers from taking adverse action against an employee because of the employee's age. 29 U.S.C. § 621-34. In the Second Circuit, claims under both Title VII and the ADEA are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (extending McDonnell Douglas burden-shifting analysis to the ADEA); Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (affirming the continued applicability of the McDonnell Douglas framework after the Supreme Court's decision in Gross v. FBL Financial Services, Inc., 129 S.Ct. 2243 (2009)).

Under this framework, "a plaintiff must ultimately prove that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." La Grande v. DeCrescente Distributing Co., Inc., 370 F. App'x. 206, 211 (2d Cir. 2010) (internal quotation marks omitted); Weinstock v. Columbia University, 224 F.3d 33, 42 n.1 (2d Cir. 2000). "At the pleading stage, however, Plaintiff need only allege facts sufficient to support the reasonable inference that Plaintiff suffered an adverse employment action because of [his] membership in a protected class." Crawford v. Lutheran Medical Center, No. 08-CV-3429, 2011 WL 887806, at *3 (E.D.N.Y. March 14, 2011).

## A. Plaintiff's Claim for Discrimination Based on Sexual Orientation

Title VII protects individuals who are subjected to discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1), (2). Sexual orientation is not a statutorily protected class. Thus, the "law is well-settled in this circuit [that] . . . Title VII does not prohibit harassment or discrimination because of sexual orientation." Dawson v. Bumble &

9

Bumble, 398 F.3d 211, 217 (2d Cir. 2005) (internal quotation marks omitted).  As a result, Plaintiff's disparate treatment, hostile work environment, and constructive discharge claims under Title VII that are based on his sexual orientation are dismissed.

### B. Plaintiff's Claim for Discrimination Based on Gender

Plaintiff also brings a gender discrimination claim under Title VII.  To survive the motion to dismiss his gender discrimination claims, the Plaintiff must plead "facts that would create an inference that any adverse action taken by any defendant was based upon'" his gender. Maldonado v. George Weston Bakeries, No. 09–CV–4952, 2011 WL 6317516, at *1 (2d Cir. Dec. 19, 2011) (quoting Patane, 508 F.3d at 112 n.3 (2d Cir.2007)); Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000).

The Amended Complaint is devoid of any such facts. Plaintiff alleges nothing more than he is a male and that he was subjected to adverse employment action.  "At a bare minimum, Rule 12(b)(6) requires more than the allegation that a member of a protected class is unhappy with the way that he has been treated by an entity subject to . . . civil rights laws."  Williams v. City University of New York, No. 10–CV–2127, 2011 WL 6934755, at *6 (E.D.N.Y. Dec. 30, 2011). As a result, Plaintiff's disparate treatment, hostile work environment, and constructive discharge claims under Title VII that are based on his gender are dismissed.

Plaintiff's Amended Complaint also appears to allege a "gender stereotyping" claim, which seeks to recover for discrimination based on the plaintiff's non-conformity with gender stereotypes. Dawson, 398 F.3d at 218.  "That is, individual employees who face adverse employment actions as a result of their employer's animus toward their exhibition of behavior considered to be stereotypically inappropriate for their gender may have a claim under Title VII." Dawson, 398 F.3d at 218.  However, Plaintiff does not allege that he was treated

10

differently because he refused to act in conformity with male stereotypes. He instead argues that his disparate treatment was motivated by the stereotype "that a homosexual is more likely to be a pedofile [sic]." Pl. Mem. Oppn. at 19. This assertion—an assertion that Defendants' animus flowed from a belief that Plaintiff conformed to certain stereotypes about gay men, rather than Plaintiff's non-conformity with male stereotypes—betrays Plaintiff's fundamental misunderstanding of a gender stereotyping claim. Plaintiff's gender stereotyping claim is merely an attempt to "bootstrap protection for sexual orientation into Title VII," Dawson, 398 F.3d at 218, and therefore is dismissed.

### C. Plaintiff's Claim Based on Age Discrimination

Plaintiff brings his age discrimination claim under the ADEA. Plaintiff alleges nothing more than he is sixty-two years old and that he was subjected to adverse employment action. As with his gender discrimination claims, Plaintiff alleges no "facts that would create an inference that any adverse action taken by any defendant was based upon" his age. Maldonado, 2011 WL 6317516, at *1. As a result, Plaintiff's disparate treatment, hostile work environment, and constructive discharge claims under the ADEA are dismissed.

### V.   PLAINTIFF'S FEDERAL RETALIATION CLAIMS

Plaintiff alleges that the Defendants retaliated against him for opposing what he believed to be unlawful discrimination based on his sexual orientation. Title VII protects workers from retaliation by making it unlawful "an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Retaliation in response to claims of age-based discrimination is also illegal, see 42 U.S.C.

11

§ 623(d), and such claims are analyzed in the same manner as a Title VII retaliation claims. Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir. 1997). To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) he participated in a protected activity known to the defendant; (2) he suffered an adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse action. Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007). "A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (applying anti-retaliation provision of Americans with Disabilities Act, 42 U.S.C. § 12203 (a)) (quotation omitted); see also Hubbard v. Total Commc'n, Inc., 347 F. App'x 679, 681 (2d Cir. 2009). Protected activity can include informal protests to management as well as complaints to the EEOC. See La Grande v. DeCrescente Distributing Co., Inc., 370 F. App'x 206, 212 (2d Cir. 2010); Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990). "Adverse employment action" in the retaliation context is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Patane, 508 F.3d at 116.

## A. Protected Activity Under Title VII

As noted above, sexual orientation is not a protected class for purposes of Title VII's substantive anti-discrimination provision. However, federal courts are divided on the question of whether opposing discrimination based on sexual orientation can constitute protected activity under Title VII's retaliation provision. The Ninth Circuit and two district courts in the Second Circuit have answered that question in the affirmative. Dawson v. Entek Intern., 630 F.3d 928,

12

936-37 (9th Cir. 2011); Swift v. Countrywide Home Loans, Inc., 70 F. Supp. 2d 483, 489 (E.D.N.Y. 2011); Martin v. New York State Dept. of Correctional Services, 224 F. Supp. 2d 434, 448 (N.D.N.Y. 2002) (Treece, M.J.). The Sixth and Seventh Circuits have reached the opposite conclusion. Gilbert v. Country Music Ass'n, Inc., 432 F. App'x 516, 520 (6th Cir. 2011); Hamner v. St. Vincent Hosp. & Health Care Center, Inc., 224 F.3d 701, 707 (7th Cir. 2000).

The anti-retaliation provisions of Title VII have a broad reach. The anti-retaliation provision's "'primary purpose[]' [is] '[m]aintaining unfettered access to statutory remedial mechanisms.'" Burlington Northern & Santa Fe Railway Co., v. White, 548 U.S. 53, 64 (2006) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997)). "The antiretaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct," Burlington No., 548 U.S. at 63, and indeed, a plaintiff who has complained of discrimination may maintain a retaliation claim where the underlying claim of discrimination fails. See Treglia, 313 F.3d at 719. The court notes that a necessary consequence of encouraging "unfettered access" to Title VII's remedial mechanisms is that not all complaints or charges of discrimination will be legally sustainable. However, the court also believes that the reality that some complaints are not legally sustainable does not license employers to retaliate in ways that would undermine the goal of unfettered access. Given the purpose of the anti-retaliation provision, the court sees no reason to adopt a per se rule that a claimant's belief that the law protects workers from sexual-orientation-based discrimination is so unreasonable that he may not complain against it without the protection of the anti-retaliation provisions of federal law. Like any other employee who believes himself discriminated against, plaintiff engaged in protected conduct by first informally and then formally objecting to his treatment at the hands of his employers.

13

The court's conclusion is bolstered by the fact that, in the State and City of New York, "the law" *does* protect employees from workplace discrimination due to sexual orientation. See New York Executive Law § 296; N.Y.C. Admin. Code § 8-107. A lay person should not be required to expertly parse the overlapping provisions of federal, state, and local civil rights laws to determine which of the three jurisdictions have determined that discrimination based on sexual orientation is an illegal act. Moreover, gender stereotyping—that is, discrimination based on the plaintiff's non-conformity with gender stereotypes—*is* unlawful gender discrimination under Title VII. Dawson, 398 F.3d at 218. The ostensible difference between gender stereotyping and sexual-orientation-based discrimination is that the former is motivated by the employer's animus towards the employee's outward behavior, the latter by the employee's sexual preference. Courts have candidly recognized the analytical difficulties this creates, as "stereotypical notions about how men and women should behave will often necessarily blur into ideas about heterosexuality and homosexuality." Id.; see Kay v. Independence Blue Cross, 142 F. App'x 48, 51 (3d Cir. 2005) ("The line between discrimination based upon gender stereotyping and that based upon sexual orientation is difficult to draw and in this case some of the complained of conduct arguably fits within both rubrics."). If opposition to sexual-orientation-based discrimination was not protected activity, employees subjected to gender stereotyping would have to base their decision to oppose or not oppose unlawful conduct on a brittle legal distinction, a situation that might produce a chilling effect on gender stereotyping claims.

The court therefore concludes that making a complaint against discrimination based on sexual orientation can constitute protected activity under Title VII. Plaintiff engaged in protected activity when he (1) made a verbal complaint to Diamond at the February 25, 2009

14

meeting; (2) filed a charge of discrimination with the EEOC on June 10, 2010; and (3) filed the instant action on October 14, 2010.[3]

## B. Timeliness Under 42 U.S.C. § 2000e-5(e)(1)

Before discussing the other elements of Plaintiff's retaliation claim under Title VII, the court considers the alleged actions that can serve as a basis for Plaintiff's retaliation claim under 42 U.S.C. § 2000e-5(e)(1). Under that provision of Title VII, discrete acts of discrimination that occurred more than 300 days before Plaintiff filed his charge with the EEOC are time barred. 42 U.S.C. § 2000e-5(e)(1); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). Plaintiff filed his charge with the EEOC on June 10, 2010. (Am. Compl. ¶ 6.) The allegedly retaliatory acts that occurred within 300 days of June 10, 2010 were (1) Ventura's "irate" voicemail on September 11, 2009 regarding Plaintiff's failure to notify her of his application for a leave of absence; (2) Ventura's call to "the funeral home" on September 11, 2009 to ascertain the date of Plaintiff's mother's death; (3) Zolotin's "screaming" at Plaintiff on January 7, 2010 to report to his assigned classroom; (4) Plaintiff's letter of insubordination on January 8, 2010; (5) the disruption of Plaintiff's health benefits from February 2010 to April 2010; and (6) the disruption of Plaintiff's health benefits from September 2010 to January 2011.

## C. Adverse Employment Action

A delay in benefits that is only a "mere inconvenience" does not rise to the level of adverse employment action for purposes of a retaliation claim. See, e.g., Barriera v. Bankers

---

[3]  Whether the three letters Plaintiff's attorney sent to Ventura on February 5, March 8, and April 16, 2010 constituted protected activity depends on whether those letters opposed Plaintiff's benefits denial as unlawful discrimination. Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107-08 (2d Cir. 2011) ("We have held that implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's [complaint] was directed at *conduct prohibited by Title VII.*") (internal quotation marks omitted; emphasis and alteration in original). Similarly, Plaintiff's grievance of Ventura's excessing decision was not protected activity unless he maintained in the grievance or to Ventura himself that the excessing decision was motivated by his membership in a protected class or a class he understood to be protected.

15

Trust, No. 98-CV-3641, 2003 WL 22387099, at *8 (S.D.N.Y. Oct. 20, 2003) (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 200). However, where a plaintiff shows a "material loss of benefits," a plaintiff has satisfied the requirement that he show an adverse employment action. Terry v. Ashcroft, 336 F.3d at 138 (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)). Plaintiff alleges that the disruption in his benefits caused him "significant" financial injury from his disruption of benefits, which, the court concludes, constitutes having pled a material loss of benefits that could dissuade a reasonable worker from making a charge of discrimination. Therefore, Plaintiff has adequately pled the adverse employment action element of his retaliation claim.

Defendants argue that HR Connect was responsible for the disruption in Plaintiff's benefits, and there is no allegation in the Amended Complaint that anyone in that division of the Department of Education was aware that Plaintiff had engaged in protected activity. However, "[n]either this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000).

Further, Plaintiff has alleged that Ventura, a witness to Plaintiff's first instance of protected activity, actively opposed Plaintiff's first benefits application by refusing to sign the appropriate medical forms. Whether withholding or opposing an employee's benefits is an adverse employment action depends on whether the benefits were withheld or opposed in good faith, a question that is not answered by the record now before the court. Quintanilla v. Suffolk Paving Corp., No. 09-CV-5331, 2011 WL 1323033, at *6-7 (E.D.N.Y. Feb. 10, 2011) (noting that, prior to discovery, a plaintiff "has had no opportunity to determine whether the defendants'

opposition to his [benefits] claim was reasonable, or based on legitimate or pretextual grounds
. . . .").

**D. Causation**

Plaintiff has pled facts that tend to show a causal link between his protected activity and

the first period of a disruption in his benefits. To survive a motion to dismiss, "causation can be

shown either: (1) indirectly, by showing that the protected activity was followed closely by

discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus directed

against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111,

117 (2d Cir. 2000); McIntyre v. Longwood Cent. School Dist., 380 F. App'x 44, 48 (2d Cir.

2010). While the first period of benefits disruption, in February 2010, occurred approximately

one year after Plaintiff objected to Diamond's discriminatory remarks, in February 2009,

Plaintiff alleges that Ventura's stated reason for excessing him proved to be false and that he was

given an unwarranted letter of insubordination. These allegations of retaliatory animus support

an inference of causation. See Patane, 508 F.3d at 116-17 (holding that, even given a one-year

separation between protected activity and adverse action, causation element of a retaliation claim

was adequately pled by allegations of retaliatory animus exampled by supervisors giving plaintiff

a false reprimand and conspiring to drive plaintiff out of her job).

Plaintiff has also adequately pled a causal connection between his EEOC charge and the

second disruption of benefits. Plaintiff filed his EEOC charge on June 10, 2010 and was denied

benefits sometime in September 2010. The temporal proximity between these events, coupled

with the history of animus directed at Plaintiff, is sufficient to support an inference of causation.

Brown v. Time Warner Cable Inc., No. 10-CV-8469, 2011 WL 4552988, at *3 (S.D.N.Y. Jul. 18,

2011) ("Defendants were aware of Brown's complaint, and approximately four months elapsed

between his complaint and his termination, a time period generally accepted by this Circuit as supporting an inference of causation.").

In sum, Plaintiff's retaliation claim under Title VII based on his sexual orientation survives Defendants' motion to dismiss. The Amended Complaint does not specify whether Plaintiff made an allegation of gender-based or age-based discrimination in his EEOC charge. The Court must draw all reasonable inferences in favor of the plaintiff, and thus assumes for the purposes of resolving Defendants' motion to dismiss that Plaintiff complained of gender-based and age-based discrimination in his EEOC charge. Therefore, Plaintiff's gender-based retaliation claim under Title VII and his retaliation claim under ADEA will survive Defendants' motion to dismiss.

## VI.  PLAINTIFF'S STATE & LOCAL LAW DISCRIMINATION CLAIMS

Discrimination claims brought under the SHRL and the CHRL are analyzed under the same standard as Title VII and the ADEA. Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 115 n.3 (2d Cir. 2007) ("age discrimination claims under the ADEA, NYSHRL, and NYCHRL are analyzed under the same standard"); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000) ("identical standards apply to employment discrimination claims brought under Title VII, Title IX, New York Executive Law § 296, and the Administrative Code of the City of New York"). Therefore, Plaintiff's SHRL and CHRL claims of gender and age discrimination fail along with his federal claims of the same nature. However, one significant difference between Title VII and the SHRL and CHRL is that unlike its status in federal law, sexual orientation is an expressly protected class under the SHRL and the CHRL. New York Executive Law § 296; N.Y.C. Admin. Code § 8-107. Consequently, the court considers each form of discrimination based on sexual orientation that Plaintiff alleges sequentially.

## A. Disparate Treatment Claims under State and Local Law

To prevail on a disparate treatment claim under the SHRL and CHRL, "a plaintiff must ultimately prove that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." La Grande v. DeCrescente Distributing Co., Inc., 370 F. App'x. 206, 211 (2d Cir. 2010) (internal quotation marks omitted); Weinstock v. Columbia Uni., 224 F.3d 33, 42 n.1 (2d Cir. 2000). "At the pleading stage, however, Plaintiff need only allege facts sufficient to support the reasonable inference that Plaintiff suffered an adverse employment action because of [his] membership in a protected class." Crawford v. Lutheran M. Ctr., No. 08-CV-3429, 2011 WL 887806, at *3 (E.D.N.Y. March 14, 2011).

"For purposes of [the] substantive anti-discrimination provisions [of the SHRL and the CHRL], an adverse employment action is generally characterized as a materially adverse change in the terms and conditions of employment, and may include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Bowles v. New York City Transit Authority, 285 F. App'x 812, 813-14 (2d Cir. 2008) (internal quotation marks omitted).

The court has already concluded that the disruptions in Plaintiff's benefits may constitute an adverse employment action for purposes of his retaliation claim. Plaintiff's allegation that he suffered "significant" financial injury as a result of the disruption in his benefits is sufficient to satisfy the adverse employment action element of his disparate treatment claim at the pleading

19

stage. Therefore, Plaintiff's disparate treatment claim based on sexual orientation under the SHRL and the CHRL will survive Defendants' motion to dismiss.

### B. Hostile Work Environment Claims under State and Local Law

Plaintiff also alleges Defendants created a hostile work environment in violation of state and local law. Under the SHRL, a plaintiff may "state a claim of discriminatory harassment based upon a hostile work environment by alleging . . . that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment . . . ." Murray v. New York Univ. Coll. of Dentistry, 57 F.3d 243, 249 (2d Cir. 1995). Among the factors to be considered are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Id. (internal quotation marks omitted).

Under the CHRL, by contrast, a plaintiff need not demonstrate that the treatment was "severe or pervasive." Williams v. N.Y. City Hous. Auth., 61 A.D.3d 62, 76 (N.Y. App. Div. 2009). Instead, a plaintiff need only show that he has been "treated less well than other employees" because of his membership in a protected class. Id. at 78. Still, even under the CHRL's more liberal standard, "petty slights or trivial inconveniences" do not constitute a hostile work environment. Id. at 80.

The Amended Complaint sets forth only two incidents of explicitly discriminatory conduct. The first such incident was the November 17, 2008 meeting, at which Plaintiff was advised that several fifth-grade teachers did not want their students to be counseled by a gay

man, and that using Lego blocks during counseling sessions would "not look good for you being a gay man." The second such incident was the February 25, 2009 meeting, at which Plaintiff was advised that others in the school community knew he was "out" and that he was "light in the loafers."

Additionally, however, Plaintiff alleges numerous incidents that, although "facially neutral," contributed further to the hostile environment. "In assessing the overall hostility of a workplace, charges of discrimination must be 'considered cumulatively in order to obtain a realistic view of the work environment.'" Miller v. City of New York, 177 F. App'x 195, 197 (2d Cir. 2006) (quoting Schwapp v. Town of Avon, 118 F.3d 106, 110-11 (2d Cir.1997)). Thus, "[t]here is little question that incidents that are facially []neutral may sometimes be used to establish a course of []discrimination" that was motivated by the plaintiff's membership in a protected class. Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002). "Facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on" the plaintiff's membership in a protected class. Id.

In addition to the November 2008 and February 2009 meetings, Plaintiff alleges that he was prevented from complying with New York State education laws when he was forced to (1) share an office and (2) counsel students with his door open. He further alleges that Ventura (3) improperly excessed him, (4) "shouted" at him and slammed a door in his face, (5) left him an "irate" voicemail, (6) invaded his personal privacy by investigating the details of his mother's death, and (7) undertook to deny him health benefits. Plaintiff further alleges he was (8) unfairly criticized three times for being late to counseling appointments, (9) stripped of his duties relating to fifth graders, (10) "screamed" at by Zolotin, (11) given an unwarranted letter of

21

insubordination, (12) denied benefits from February 2010 to April 2010, (13) and again denied benefits from September 2010 to January 2011. Based on these thirteen incidents, viewed in conjunction with and in light of the overtly derogatory comments directed at Plaintiff, it is plausible to conclude that Plaintiff was subjected to severe or pervasive conduct that was motivated by his sexual orientation. Schwapp, 118 F.3d at 112 (holding that there was a triable issue of fact as to whether employer created a hostile work environment when plaintiff alleged ten to twelve incidents of racist conduct over a twenty-month period).

Plaintiff filed his original Complaint in this action on October 14, 2010. (Docket Entry # 1.) Thus, Defendants argue, Plaintiff's hostile work environment claim cannot be supported by incidents that occurred before October 14, 2009—that is, incidents that occurred outside the one-year statute of limitations period for claims under the SHRL and the CHRL against the Department of Education. New York Education Law § 3813(2-b); Springs v. New York City Bd. of Educ., No. 10-CV-01243, 2010 WL 4068712, at *2 (S.D.N.Y. Oct. 14, 2010).

However, acts occurring outside the statute of limitations period can support a hostile work environment claim as long as "'any act that is part of the hostile work environment'" occurs within the statutory time period. See Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002)); Bermudez v. City of New York, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (holding that the continuing violation doctrine applies to claims under the SHRL and the CHRL). An incident that occurred within the limitations period "permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 77 (2d Cir. 2010). If a sufficiently related act occurred within the statutory period, "'the entire time period of the hostile environment may be considered by a court for the purposes of

determining liability.'" Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir.2004) (quoting Morgan, 536 U.S. at 117).

Plaintiff was informally reprimanded for being late to counseling appointments during three meetings that took place on November 17, 2008 and February 3 and 25, 2009. Each of those reprimands occurred before the October 14, 2009 cutoff date. Plaintiff was given a letter of insubordination for being late to counseling appointments during a meeting that took place on January 8, 2010, after the cutoff date. The court concludes that the post-cutoff meeting is sufficiently related to the pre-cutoff meetings because, at all four meetings, Ventura, Diamond, and Zolotin were present and Plaintiff was given an unwarranted reprimand. See Morgan, 536 U.S. at 117 (affirming lower court's conclusion that continuing violation doctrine applied when incidents occurring before and after the cutoff date "were perpetrated by the same managers"); see also Fitzgerald v. Henderson, 251 F.3d 345, 362-63 (2d Cir. 2001) (holding that the continuing violation doctrine applied to plaintiff's hostile work environment claim when incidents of "unjustified criticism" occurred before and after the cutoff date). Consequently, the court may consider incidents that occurred before October 14, 2009 under the continuing violation doctrine.

In sum, Plaintiff's hostile work environment claims under the SHRL and the CHRL based on his sexual orientation survive Defendants' motion to dismiss.

## C. Constructive Discharge

The court next considers the viability of Plaintiff's constructive discharge claim under the SHRL and the CHRL based on his sexual orientation. "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." Petrosino v. Bell Atlantic, 385

F.3d 210, 229 (2d Cir. 2004). It is self-evident that in order to state a claim for constructive discharge, a plaintiff must allege that he has quit his employment with the defendant. Plaintiff makes no such allegation. Rather, he alleges that he has "been out of work since January 2010," the month he began his second period of medical leave. (Am. Compl. ¶ 95).

Assuming *arguendo* that Plaintiff has at some point resigned from the City's employ, Plaintiff has nonetheless failed to state a claim for constructive discharge. A constructive discharge claim requires the plaintiff to "demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Arroyo v. WestLB Admin., Inc., 54 F. Supp. 2d 224, 232 (S.D.N.Y. 1999) (internal quotation marks omitted). "The standard is not easily met." Id. at 231. Plaintiff formally challenged Ventura's decision in June 2009 to excess Plaintiff, a decision that would have placed Plaintiff in a different school. This seriously undermines any assertion that Plaintiff found the atmosphere at P.S. 81 so intolerable that he was forced to quit involuntarily. Plaintiff has not alleged further facts to suggest that the environment at P.S. 81 later became worse. Therefore, Plaintiff's claim for constructive discharge based on his sexual orientation under the SHRL and the CHRL are dismissed.

## VII.   PLAINTIFF'S RETALATION CLAIMS UNDER STATE & LOCAL LAW

Plaintiff also brings a retaliation claim under the SHRL and the CHRL. Retaliation claims under the SHRL are governed by essentially the same standard as retaliation claims under Title VII. Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 609 (2d Cir. 2006). The CHRL is slightly more solicitous of retaliation claims than federal and state law because, rather than requiring a plaintiff to show an "adverse employment action," it only requires him to show that something happened that was "reasonably likely to deter a person from engaging in

24

protected activity." See N.Y.C. Admin. Code § 8-107(7). As Plaintiff's retaliation claims under Title VII and ADEA survive, so do his claims for retaliation under the identical standard of the SHRL and the somewhat more permissive standard of the CHRL. Cf. Williams v. New York City Housing Authority, 872 N.Y.S.2d 27, 31 (1st Dep't, 2009) (for NYCHRL claims, federal law is only "a color below which the City's Human Rights Law cannot fall, rather than a ceiling above which the local law cannot rise") (internal citations and quotations removed).

## VIII.  NOTICE OF CLAIM FOR CLAIMS UNDER THE SHRL AND THE CHRL

Section 3813(1) of New York Education Law requires a plaintiff to serve a notice of claim prior to the commencement of an action against the Department of Education or its officers. See New York Education Law § 3813(1). Specifically, under § 3813(1), the plaintiff must serve a notice of claim on the Department of Education within ninety days after the claim arises. See id. Further, the plaintiff must plead in his complaint that notice of the claim has been served and that the Department of Education has either neglected or refused to satisfy his claim within thirty days of service. See id.

Neither Plaintiff's Complaint or Amended Complaint alleges that he served a notice of his claim on the Department of Education. Plaintiff, in his memorandum in opposition to Defendants' Motion to Dismiss, asserts that "Plaintiff did serve a notice of claim in this case." Pl. Oppn. Mem. at 24. An assertion in a memorandum does not satisfy the requirements of § 3813, let alone an assertion that does not maintain the notice was timely served. AT&T v. New York City Dep't of Human Res., 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (collecting cases that held notice of claim requirements are construed strictly by New York state courts and failure to abide by their terms mandates dismissal of the action); but see Kushner v. Valenti, 285 F. Supp. 2d 314 (E.D.N.Y. 2003) (holding that notice requirement of § 3813(1) was satisfied by plaintiff's

filing of an EEOC charge when the EEOC sent a "Notice of Charge of Discrimination" to school district).

On or before 30 days from the date of this order, Plaintiff must file an amendment to his Amended Complaint that alleges he strictly complied with the requirements of New York Education Law § 3813(1) and that the notice was timely served. If Plaintiff fails to timely amend his Amended Complaint, his claims under the SHRL and the CHRL will be dismissed with prejudice.

## IX. CONCLUSION

Defendants' Motion to Dismiss is GRANTED with respect to Plaintiff's sexual orientation discrimination claims under Title VII; Plaintiff's constructive discharge claim under the SHRL and the CHRL; Plaintiff's gender discrimination claims under all statutes; Plaintiff's age discrimination claims under all statutes; and all of Plaintiff's claims against the City. Defendants' Motion to Dismiss is DENIED with respect to Plaintiff's retaliation claims under all statutes and Plaintiff's disparate treatment and hostile work environment claims under the SHRL and the CHRL based on sexual orientation. Plaintiff shall amend his Amended Complaint within 30 days of this order to reflect his strict compliance with New York Education law § 3813(1).

**SO ORDERED.**

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
February 17, 2012

/NICHOLAS G. GARAUFIS(
United States District Judge

26